

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7280 | **DATE** | 2/27/2004 |
| **CASE TITLE** | Howden Buffalo, Inc. vs. Blac, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court finds for the Plaintiff and awards Howden damages in the amount of $95,481.58. Bench Trial set for 3/2/04 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 0 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 32 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials TH | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOWDEN BUFFALO, Inc., )
)
    Plaintiff, )
)
v. ) No. 02 C 7280
)
BLAC, Inc., )
)
    Defendant. )

DOCKETED
MAR 0 1 2004

## MEMORANDUM OPINION AND ORDER

Howden Buffalo, Inc., ("Howden") sued Blac, Inc., ("Blac") for breach of contract in connection with the equipment upgrade of a Maryland power plant. Howden claims that the general contractor, Bechtel Corporation ("Bechtel"), withheld certain payments from Howden because of deficiencies in equipment provided by Blac. Howden further alleges that these deficiencies amount to a breach of contract by Blac. Following a bench trial, the Court finds for Plaintiff, awarding Howden $95,481.58.

## LEGAL STANDARDS

"In order to state a breach of contract claim under Illinois law, a plaintiff must allege (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) injury to the plaintiff as a result of the defendant's breach." *S. Indus. Leasing, LLC v. Ingersoll-Rand Co.*, No. 02 C 4528, 2003 WL 223436, *7 (N.D. Ill. Jan. 31, 2003) (citing *Gonzalzles v. Am. Express Credit Corp.*, 315 Ill. App. 3d 199, 206 (2000)).

In this case, there are no contested issues of law. The question of fact presented to the Court is whether Blac's hydraulic actuators[1] met the technical performance specifications prepared by Bechtel. Howden contends that the actuators did not meet the requirements of the specifications. The deficiency of the actuators, Howden claims, caused Bechtel to "back charge" Howden for the costs of bringing the actuators into compliance with the specifications. Blac contends that the actuators met the requirements of the specifications. Accordingly, Blac denies that any charges from Bechtel to Howden were the result of the alleged failure of the actuators to meet the specifications.

At trial, the Court heard the testimony of John Magill, Director of Engineering at Howden; Lenz Counsil, Engineering Manager at Blac; and Phil Blac, owner of Blac, Inc. Additionally, the Court considered the deposition testimony of Sheila Thurston, Control Systems Engineer at Bechtel; Mark Voorhis, Project Engineer at Bechtel; Edward Perko, Manager of Retrofit Projects at Bechtel; and John Hayden, Supervisor of Plant Engineering at Brandon Shores for Constellation Energy. Finally, the Court considered the documents entered into evidence. Based on the evidence and the credibility of the witnesses, the Court finds for the Plaintiff. Plaintiff has proven by a preponderance of the evidence that Blac breached its contract with Howden.

## FINDINGS OF FACT

In 2000, Constellation Power undertook a retrofit project at its Brandon Shores, Maryland, Power plant. The general contractor for the project was Bechtel. The primary scope of the retrofit project was to add a selective catalytic recovery convertor which would filter emissions from the power plant. Because of the addition of this filtering device, the power plant required stronger fans

---

[1] Described in greater detail below, Blac's actuators use electric pumps and hydraulic fluid to control the vanes that restrict airflow through the boiler system.

2

to force air through the system. Plaintiff Howden provided large industrial fans, known as induced draft fans, for installation as part of the retrofit project. The fans draw flue gas from the power plant's coal-burning boilers and through the filtering system.

Howden also provided electro-hydraulic actuators to open and close the inlet control vanes on its induced draft fans. These actuators use hydraulic fluid to pressurize nitrogen and thus store the energy used to change the position of the draft vanes. Through the use of lever arms, the actuators convert stored energy into torque, driving the linkage that opens and closes the vanes at the front of the induced draft fan. Similar in form to venetian blinds, the inlet control vanes control the flow of gases through the system according to the loads being placed upon the plant's boilers at any given time. Howden procured the electro-hydraulic actuators from Defendant Blac.

Bechtel prepared technical specifications for the actuators and gave those specifications to Howden. Howden, in turn, provided those specifications to Blac. Howden and Blac entered into a purchase agreement under which Blac would provide such actuators to Howden in accordance with the pertinent portions of the Bechtel specifications. Blac agreed that the actuators would meet the technical specifications provided to it. Blac delivered the actuators to Howden, and the actuators were installed at the Brandon Shores power plant along with the Howden induced draft fans. Howden paid Blac for the actuators.

Shortly after the installation of the new equipment, Constellation Power had problems with the operation of the Blac actuators. The actuators were able to open or close the inlet control vanes upon an initial command by the plant computer. During plant operation, however, the actuators became hydraulically depleted and would lock in place until they could hydraulically recharge — a process that took one minute. As a consequence of the hydraulic depletion of the actuators,

3

Constellation Power was forced to adjust the loads on the power plant's boilers, disrupting the power plant's normal operations and reducing the plant's electricity output.

Blac's actuators failed to meet the technical specifications prepared by Bechtel. Bechtel's specification 2.2.9.6 required that the actuators have a "continuous duty cycle rating." For an actuator to have a continuous duty cycle rating, the weight of the evidence, including the testimony of Mark Voorhis and Phil Blac, showed that the actuator must be able to maintain a set point of pressure within the boiler while retaining enough hydraulic energy to complete a full stroke. In other words, rather than requiring an indefinite number of back-to-back full strokes, the continuous-duty specification mandates that the actuator must be able to handle fluctuations within the boiler while still maintaining enough energy to perform a full stroke as would be required in an emergency trip.

Based on the testimony of John Hayden, Mark Voorhis, Sheila Thurston, and John Magill, the Blac actuators failed to provide "continuous duty" as required by the specifications. As John Magill and John Hayden testified, Blac's actuators could not perform a full stroke, i.e., opening and/or closing the inlet control vanes, whenever called upon to do so during the operation of the boiler. Thus, they did not meet the requirements of the specifications. As a consequence, the Blac actuators became hydraulically depleted during boiler operation, which included pressure fluctuations caused by bringing coal pulverizers online. The failure of the actuators caused a risk of implosion or explosion of the plant boilers, and forced the plant to disrupt its normal operation in order to prevent that from happening.

In early 2001, Bechtel hired Blac to modify and upgrade the originally-installed Blac actuators so that they could open or close the inlet control vanes whenever called upon to do so, and

not become hydraulically depleted and lock up. Blac upgraded the actuators by increasing the hydraulic reservoir capacity and adding larger, more powerful pumps.

Bechtel paid Blac $72,200.00 for additional equipment to upgrade the actuators.[2] Bechtel also paid Blac $15,121.58 for installing the additional equipment. Bechtel then reduced the amount that it paid Howden on Bechtel's contract with Howden by those amounts. Bechtel also reduced the amount it would have otherwise paid Howden by $8,160.00, reflecting hours expended by Bechtel engineers working with Blac and Constellation Power to correct the failure of the original Blac actuators to meet the specifications.

The Court finds that the original Blac actuators failed to meet the requirements of the agreed specifications, that the failure of those actuators to meet the specifications constituted a breach of contract by Blac, and that Howden was damaged in the amount of $95,481.58 as a consequence of that breach. The Court therefore finds in favor of Howden and awards judgment in the amount of $95,481.58.

---

[2] Bechtel paid Blac more than $72,200 for additional equipment, but did not charge the entire amount to Howden. Bechtel attributed $16,000 to redundant equipment not attributed to any contract breach.

## CONCLUSION

For the reasons stated above, the Court finds for the Plaintiff, and awards Howden damages in the amount of $95,481.58.

Dated: February 27, 2004

ENTERED:

*[signature]*

AMY J. ST. EVE
United States District Court Judge